America v. Eliana Sarmiento Hey, please the court. My name is James DeVita. I represent the appellant, Eliana Sarmiento, and I represented her at the trial. The government's argument in this case that there was no violation of the Speedy Trial Act rests on two very flawed theories. The first is that the Speedy Trial Act was told indefinitely by a pro se motion made by Julio Trinidad in August of 2014 and that the flaw in that is that Mr. Trinidad and Ms. Sarmiento were not co-defendants. Section 3161.6 only applies where they are in fact co-defendants. The federal rules of criminal procedure give the government two ways of making defendants co-defendants. One is Rule 8B. They can be joined in the same indictment. The other is Rule 13. If they're in separate indictments, the government can move to consolidate the two indictments. The government says as a practical matter everyone knew they were co-defendants. They had been treated as such. There was at least one joint status at conference in which counsel for Mr. Trinidad attended, and that it's unduly formalistic to look for that kind of jointer. They said that they were going to indict everyone. The fact that they didn't indict them altogether ever should really be of no import. Why is that wrong? Well, because, Your Honor, the informal understanding that may have been prevalent is not a substitute for the federal rules of criminal procedure and the procedures that are available to make defendants co-defendants. In fact, at the pretrial conferences, there was no clear determination, and there couldn't have been, that there would be a joint trial because there had been no time for making motions yet, and therefore there was no opportunity for motions to sever. There were multiple defendants in some of the indictments. My client, I was assigned after the first two pretrial conferences, Your Honor, so I wasn't there, and I wasn't party to any understanding. And therefore, that's another example of why it's not just formalistic. In order for me as incoming counsel to understand what the status of these various 17 different indictments are, there should be clear court orders to determine who's in and who's not in. And they weren't. There were no such clear orders. How many people were indicted in the end under this criminal number? Seventeen. Seventeen? Seventeen. I believe that's correct, Your Honor. There was S-18. Yes. S-18 was the final indictment against my client alone that was obtained a month before the trial in, I believe it was filed in August of 2016. And did Mr. Trinidad's name ever appear on an indictment with any of the other defendants? No. And certainly not with my client, but I don't think with any of the other clients, any of the other defendants either. So that's the first basis on which the government argues there was no Speed of Trial Act violation. The second is that the 30-day rule set forth in Section 3161H1H never was triggered because the motion, my client's motion, for a bill of particulars was, quote, never undertaken under advisement, which, Your Honor, frankly is frivolous because Judge Wood decided the motion. How could she have decided the motion without taking it under advisement? The fact of the matter is that in February of 2015, the case was fully, the motions, not just Ms. Sarmiento's, but the other motions were fully briefed before Judge Wood. She issued a decision in October of 2015, and in that period of time, the Speed of Trial Act started running again after the 30-day time period in 3161H1H, and it expired before the decision on those motions. The other issue, Your Honor, is what is the appropriate remedy? With what result? With what result on the motions? The expiration, yes. I submit that the motion, the Speed of Trial clock, Speed of Trial time expired in July of 2015, about three months before the decisions. And therefore? And therefore, the judge should have dismissed the indictment. Now, we can talk about whether it should have been a dismissal with or without prejudice. Did you ask for that? Yes. I asked for a dismissal with prejudice. The judge denied dismissal at all, and I would submit that did not properly consider the issue of whether it should be dismissed with prejudice because she did not consider the seriousness of the offense as a significant factor in determining whether to dismiss with or without prejudice. Here, Judge Wood considered not the conduct and the offense charged against my client, but the overall scheme of which she was a very small part. And therefore, by determining that the millions of dollars, several million dollars, were obtained in the fraud, and therefore it was a serious charge, she did not look at the fact that my client had a very small part of that. Did you ever? Oh, go ahead. Was a motion for severance made? No, Your Honor, and I'll tell you why it wasn't. I did not make a motion. I mean, a motion with other defendants moved for severance. I did not move for severance because the defendants in the indictment with my client were pleading guilty. And therefore, there was nothing to sever. I had anticipated a possible motion for severance focused on . . . But a motion for severance was made. Not by my client. Yes. And wasn't it denied on the basis that the defendants were all properly joined? Well, I don't even know that the word properly joined was used in the judge's decision denying the motion for severance, but . . . It was held that there was, in any event, no basis for severance. My position, one of the defendants who made the motion for severance, and I actually discussed this with counsel for that defendant, was a defendant who was named only . . . as the only defendant in the indictment in which she was indicted. And I argued that she had no basis for making a motion for severance because she wasn't joined with any other defendant. In the same way, I could not make . . . I, in my view, could not make a motion to sever the case from . . . my client's case from Mr. Trinidad because my case wasn't . . . her in which . . . that related to a part of the case in which my client was not involved and some of the other defendants in that indictment were. But, in my view, I did not have a basis for moving to sever my client from the people with whom she was not joined. Did you attend joint pretrial conferences? I did after the motions. The first pretrial conference that I attended, Your Honor, was after the motion was . . . the motion for . . . all of the pretrial motions were denied. Was there a joint trial date? At that point, there was no trial date. Not at that point, but there became a point when there was a joint trial date? Yes, Your Honor, with three defendants. Well, how do you have joint trial conferences, pretrial conferences, and a joint trial date if people aren't in the same case? But after . . . Your Honor, this took place after my motion to dismiss for the speed of trial act violation was denied. So, it obviously . . . Judge Wood apparently took a different view than my view that my client was never joined with Mr. Trinidad. And Trinidad didn't go to trial. Actually, my client . . . Am I right that there was only one pretrial conference that was attended by either you or whoever was representing Ms. Sarmiento and Mr. Trinidad's counsel? I think that's right, Your Honor, because the first pretrial conference occurred before Mr. Trinidad was even indicted. The second one, I believe, is the one that was attended. I, again, was not yet assigned. I was assigned at the conference. I was not at the conference personally because I hadn't been notified that I was being assigned. But that, I believe, was the only conference in October of 2014 where Mr. Trinidad and Ms. Sarmiento were both present. Your Honor, I see that my time is up. I do want to address . . . I'll let you address whatever it is you're planning to address, but I wanted to ask you a question about Judge Wood's decision on the speed of trial act. Was that oral or written? It was written. It's, I think, at page 100 of the appendix, Your Honor. 200. 200. 200. I'll tell you in a moment exactly what page it is. Yeah. I think it was page 200. 200. 200. Yeah. That's correct. Yes, there was a written decision. And in the decision, the judge accepted the government's request and that, therefore, 3161.6 did apply. You were going to say before I interrupted you . . . Yes, Your Honor. I just wanted to address the issue of even assuming that a dismissal without prejudice is the remedy that should have been granted, it would require, I think, Zedner and this Court's decision in Tennyson, which, Your Honor, Judge Newman was on the dismissal without prejudice. I would submit that there is a basis for dismissal with prejudice. I think that, as I said, Judge Wood did not consider the seriousness of the offense with which my client was charged. But in any event, even if it's only a dismissal with prejudice that is the appropriate relief here, it still needs to . . . the conviction needs to be vacated and remanded to the district court. Thank you, Your Honor. Mr. Shin. May it please the Court, my name is Juan Shin. I'm an assistant U.S. attorney for the Southern District of New York, and I represent the United States in this appeal, although I did not represent the government below. Now, first, Your Honor, the judgment should be affirmed first because there was no speedy trial violation. As Judge Wood found in her written decision, she made numerous findings relevant to the issues on appeal. She found that the time was properly excluded because both a co-defendant's motion, that's Trinidad's motion, and the defendant's own motion were pending and they were not yet fully briefed, and she was still awaiting further briefing and contemplating a hearing. Given the pendency of those motions, Judge Wood found that time was excluded. Thus, under either of those independently applicable provisions, time was excludable here. Could you address why Mr. Trinidad was appropriately treated as a co-defendant? My understanding is he was not . . . the prosecutions weren't consolidated, they were never indicted together. There was . . . your brief argues that as a practical matter, everybody knew that they were co-defendants, but you anticipated indicting and you had an opportunity to indict. In fact, you re-indicted Ms. Sarmiento after Mr. Trinidad had been located and I believe indicted himself, but failed to join them. Why is that? Don't we need some kind of bright line to look at to determine who's actually a co-defendant and who isn't? I agree a bright line is helpful here. There are actually several bright lines that all independently established that they were co-defendants in the case. First, Your Honor, the defendants, Sarmiento and co-defendant Trinidad, they were charged in the same case under the same docket number before the same judge. Is there a federal rule that makes that operable as co-defendants? I thought we had to look at the Federal Rules of Criminal Procedure, Rule 8 and 13 to determine who's a co-defendant. We don't look at the clerk's docket number to determine who's a co-defendant, do we? This is just the first of numerous considerations that Judge Wood took into account. First, they were all defendants charged in the same case before Judge Wood. Although they were charged in separate indictments, they all appeared before her in the same broad case. They received the same discovery. They were charged in the same scheme. Then to remove any conceivable doubt that may have persisted, Judge Wood found at multiple conferences, conferences attended by all of the defendants that were charged at the time in the case, she found that they would be jointly tried. At the first conference in January of 2014, Your Honor, that was a defendant where Sarmiento was present. Trinidad had not yet been charged. Judge Wood found, based on the agreement of all of the defense counsel that were present at the time, this is Mr. DeVita's predecessor counsel. But of course, Mr. Trinidad is the operative defendant. The fact that he hadn't been charged yet makes that conference kind of irrelevant, doesn't it? No, Your Honor. It lays the context. I'll get to the next conference. At that first conference in January 2014, with the agreement of all defense counsel, Judge Wood found that she ordered that there would be a joint trial date in February, on February 23rd, 2015, and accordingly excluded time for all defendants. Then in July of 2014, at a subsequent conference, by that point, Defendant Trinidad had been charged as well in the case. That conference was attended by both Sarmiento and Trinidad, as well as all of the other co-defendants in the case. At that conference, Judge Wood found she ordered again that that February 23rd, 2015, trial date would apply to all defendants. She would not entertain motions for adjournments for any of the newly charged defendants. Again, she reiterated that time was excluded for all defendants until that joint trial date. At that point, why don't you move to consolidate the indictments that you brought? Well, that's what the government made clear to defense counsel and to the court. That was the plan. The plan all along in this case, Your Honor . . . You made clear there was a plan to consolidate, is that what you're saying? The plan in the end was, whatever defendants among the . . . ultimately, there were, I case, charged at various points. The plan ultimately is that, obviously, the government anticipated that most of the defendants would plead out before any trial. The plan all along, and this was made clear at the very first conference, the plan all along was that ultimately, when it came time for trial and all the parties in the court were aware of which defendants would actually go to trial, the plan was to supersede with what colloquially our office calls a trial indictment, so an indictment that only includes the remaining defendants, only includes those relevant allegations. Again, that was the plan from the beginning, and that's why Judge Wood ordered a joint trial date all along from that first January 2014 conference. The government stated its intention to do that at multiple conferences. There was never any objection by any defendant, any defense counsel about the nature of this procedure. But as to Trinidad, he was kind of off on a different path entirely. He didn't want to have counsel. He was indicted in S11, and then the government recharged but didn't include him in the new indictment. There was never a consolidation motion, and there was only one joint status conference that he attended with everybody else. I find it difficult to just look to the number of the case because I find no basis for that in the federal rules to find that they were actually co-defendants for Speedy Trial Act purposes. So why is that wrong? Your Honor, I'd like to make two points. First, again, we're not relying solely on the docket number. Again, Judge Wood eliminated any doubt by ordering a joint trial date, including at a conference where both Sarmiento and Trinidad were present with their counsel. The reason why Trinidad was not charged in one of these group indictments, there were some unique aspects to his case, principally the fact that he was also facing pending charges in two other federal districts, and the government anticipated that he would ultimately plead guilty in the case here as he had pled guilty in one of the other cases in one of the other The superseding indictment of July 2014, at that time, he wasn't included in light of those considerations. However, despite that, there was still a joint . . . after that group indictment that did not include Trinidad, Judge Wood still held a joint pretrial conference with all of the group defendants as well as with Trinidad, and it was at that conference . . . Which one was that? This is the July 17, 2014 conference. My notes suggest that's the only one at which Sarmiento and Trinidad both attended. That's right, Your Honor. So that's my point, is that even though by that point there had been a superseding group indictment that did not include Trinidad, and Trinidad had been charged in a solo indictment, after those superseders were obtained, at that July 17, 2014 conference, Judge Wood said, with all of those defendants present, including Trinidad, she said, we're having a joint trial in January . . . Would it have been appropriate for Ms. Sarmiento to move to Sever? That would have been an option, and that's exactly what another defendant, Castillo, did in this case. I'm aware of that, but there was a lot of discussion about whether that was premature because they weren't actually co-defendants, and so it was unclear that that actually qualified that one could move to Sever if you're not formally in a consolidated or co-indicted situation. I think it was appropriate for a couple of reasons. One, Your Honor, as Judge Wood found, she reached the merits of the severance motion that was made by Castillo. Castillo was similarly situated to Trinidad in the sense that Castillo was on, again, on a solo indictment, and yet made that motion to Sever from all of the other defendants in the case. Judge Wood entertained that motion on the merits. A second reason why Trinidad could have made the motion is that in order to invoke the reasonableness requirement of the co-defendant exclusion under the Speedy Trial Act, one has to make a motion to Sever. A defendant and his counsel who are in a position to wish to make a claim under the Speedy Trial Act and to dispute exclusion under the co-defendant exclusion, they should be encouraged to make that motion in order to exercise that right. So that would have been another reason. But the right, excuse me for interrupting, but Rule 14 says you can move for relief from prejudicial joinder if you've been joined in an indictment in information or consolidation for trial. None of those things had happened. Well, effectively, that's what Judge Wood had done by ordering a February 23rd joint trial date at at least two conferences. So you think we should look at, functionally, at what was going on as opposed to formally? There had been no motion to consolidate and she had not ordered consolidation, but she was acting as if they were. Well, I mean, by ordering a trial date for all defendants, she effectively ordered a joint trial date. And so whether one views it as functionally a functional analysis or whether one views that order of a trial date as effectively a consolidation order, either way that gets you to the same place, which is that Judge Wood ordered a joint trial for all defendants including Sarmiento and Trinidad. Everyone was operating under that understanding. And then for Sarmiento to come in seven months after the claim of . . . the clock is starting to rerun. So for Sarmiento to come in at that point, make a motion after time has expired, and to claim that it was never clear, to claim that this was never supposed to be a joint trial, that's just completely incompatible with the facts, with the record in this case. When you say there was a plan, I think was your word, to have a joint trial, a joint indictment for all trial defendants, is that in the record somewhere, that plan, the government's statement of that plan? Yes, Your Honor. So I believe it was mentioned at both the January 2014 conference. That's at Docket 124. Are all counsel present at that time? That was the first one at which Sarmiento was present, but Trinidad was not present, but all the other . . . All right. Is the plan ever announced when Trinidad's counsel is there? I believe it was also mentioned at the July 2014 conference, which was Docket 180, Your Honor. It would be a . . . what do you call it? A trial? A trial indictment. A trial indictment. And both defendants were on notice of that? That's my recollection. I don't have it in front of me, but that's my recollection, Your Honor. But again, Your Honor, I would encourage the Court to look at the entire record, not just that one conference, although that was the conference where both Trinidad and Sarmiento were present. I think it's reasonable to expect defense counsel to understand what happens at prior court proceedings in the case. So even though Trinidad first appeared at the July 2014 conference, once he appears in the case and his counsel appears in the case, it's a reasonable expectation that defense counsel would confer either with the other counsel in the case, with the government, perhaps raise a question with the Court at the conference if it's unclear. It's reasonable to expect that new counsel in the case will understand the prior proceedings, including that prior January conference where, again, Judge Wood ordered a joint trial. And so again, I would encourage the Court to look at the entire proceeding. And again, no question was ever raised about this procedure until the speedy trial motion. No one ever said, hey, this doesn't fly with under Rule 8 or 13. Hey, we're confused. What's going on here? No question was ever raised. And for that to be raised in the context of that motion made after the fact, at a time when it could not be cured, where the remedy, where the dismissal with prejudice, it's an unduly restrictive interpretation of the Speedy Trial Act and ultimately doesn't comply with the purpose of the act. It's an interpretation of the Speedy Trial Act in which you are vulnerable. Why can't we just say that Mr. DeVito was being clever and waiting for the time to expire and then springing, as it were? Well, this Court has said numerous times that the Speedy Trial Act is not meant to be there as a tool for defense counsel to use to ultimately ensnare the government or the Court. This Court has said that multiple times. It's not meant there to be a strategic tool for defense counsel to use. It's meant to be something that all parties understand and operate under. And again, here, everyone was operating on the same page, that there was going to be a joint trial. And therefore, it's not unreasonable to expect that everyone understood that the no-defendant exclusion would apply here. Thanks very much, Mr. Shin. Thank you. Mr. DeVito is reserved some time. Thank you, Your Honor. I think Mr. Shin is overstating the record when he says everybody was on the same page because I did have conversations with Ms. Choi about the confusion that was caused by the multiple indictments in this case. And Judge Wood could not have ordered a joint trial at the January 2014, the July 2014, or the October 2014 pretrial conferences without prejudging the motions that hadn't been made yet. She set a motion schedule. One of the motions that was made by the other defendant was motion to sever. A joint trial can only take place if you already have decided against those motions which hadn't been made yet. So the fact that she was setting a target date, which never was, which was not achieved, did not mean she had decided that all of the defendants would be tried together because defendants were going, contemplating, and ultimately at least one made a severance motion. So unless you think that Judge Wood prejudged those motions, she did not make a decision that there would be a joint trial in February, at either the January, the July, or the October pretrial conferences. Why can't a judge say there's going to be a joint trial, and if any of you want to move to get out of the joint trial, make a motion? Well, Your Honor, I think that . . . I'm putting you on notice of when we're going to have a trial. I think the procedural posture was the reverse because if until and unless the government made motions to consolidate, at that point, the defendants whose indictments would have been subject to consolidation could object, and it's the reverse of a motion to sever. And that was, frankly, what I thought at some point was going to be the way that we would approach it, that when we had 17 different indictments, my client was not in the indictment with Castillo, was not in the indictment with Trinidad . . . I understand that, but once the judge says there's going to be a joint trial, including your client, that happened, right? I don't believe that it was expressed in that fashion, Your Honor. There was a trial date that was the goal, and I think that it may have been expressed in a way that those defendants who are going to be tried together will be tried on that date, but I don't think that she prejudged . . . No, I'm not saying she prejudged anything. I'm just suggesting, as I think you all agree, there came a point where she set a trial date for a whole lot of defendants, including yours. Yes, and then she adjourned it. So at that point, you knew there was going to be a joint trial. Well, no, not before the motions to sever were presented or the motion to consolidate was made. That . . . You didn't take her at her representation as saying, there's going to be a joint trial. Well, Your Honor, she can only say that if she's already decided not to sever or to grant the consolidation. That's what I don't get. Why can't she set a joint trial date, and then anyone who's unhappy about that makes a motion to get out of it? Well, Your Honor, that's exactly what the procedural posture is when you have defendants all named in the same indictment. Then you move to sever. If the government has not moved to consolidate . . . How many indictments there are? Anybody who was told there's a joint trial can make a motion to say, Judge, let me out of that joint trial. Could I clarify? My understanding was that in January 2014, the district court . . . before Trinidad was indicted, the district court sent a joint trial date of February 23, 2015. Correct. Thereafter, at the beginning of 2015, she struck the February 23 date and did not set a new trial date. Correct. When the motions . . . The motions were being made, so everything was kind of up in the air at that point. Is that right? Yes. She adjourned the trial date sine D because the motions were pending. The government at that point could have asked the judge to make an interest of justice exclusion, but they didn't. The judgment . . . the judge did not make an exclusion in her order adjourning the quote joint trial date. Among other reasons, it would be apparent that there were motions to sever. I don't think she had ultimately decided that it would be a joint trial because it was premature to make that motion. She was giving a target date of February 23. If all could be tried together, that would be the way it would go. If, in fact, there were reasons why not, that would have to be decided through normal procedure under the federal rules of criminal procedure. That's either a motion by the government to consolidate the indictments so that the defendants who don't want to be jointly tried can oppose it and say we shouldn't be in that trial with all of those other defendants for the following reasons, or with respect to those defendants in an indictment with other defendants, they can say I want to be severed from those defendants or I want certain counts severed. But to have an informal understanding of what the government would like to do, wishing and hoping doesn't get you there, Your Honor. There are procedures that allow for the setting of trial dates. There are procedures that make defendants co-defendants, and they weren't followed, and for that reason the defendant, Ms. Sarmiento, had her Speedy Trial Act rights taken away from her in this case. Thank you. It was suggested that the Speedy Trial Act wasn't supposed to be particularly addressed to providing rights for you. Well, Your Honor, there is the, I mean, it is a right of the defendant, but it's also a right of the public. It is to protect the public. This is not a case where any traps were set for the government, Your Honor. The government created the situation. The government had several opportunities to remedy it, the possibility of a, and Mr. Shin just said that they didn't want to join Trinidad in the same indictment because he had other cases pending. They didn't want him as a co-defendant. They didn't want him as a co-defendant because they were concerned it might interfere with their preference for a February trial date. So therefore, they can't turn around and say he was a co-defendant because we wanted him to be if he was going to trial. That's wishing and hoping is not a substitute for following the federal rules of criminal procedure. Thank you, Mr. DeVito. Thank you, Your Honor.